**SDJ, INC., d/b/a Sugar Babes, et al., Plaintiffs,**

v.

**The CITY OF HOUSTON, et al., Defendants.**

**Civ. A. No. H–86–1291.**

United States District Court, S.D. Texas, Houston Division.

June 3, 1986.

David H. Berg, Joel M. Androphy, Houston, Tex., for plaintiffs.

Jerry E. Smith, Robert J. Collins, Paul R. Bibler, Jr., Gilbert Douglas, Houston, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

McDONALD, District Judge.

This is an action filed by twenty three owners of topless bars challenging the constitutionality of the City of Houston's Ordinance regulating sexually oriented businesses. In 1983, the City of Houston enacted an Ordinance providing, *inter alia,* for the regulation of the location of certain sexually oriented businesses and the exterior portion and signage of such businesses. The Plaintiffs were specifically exempted from the 1983 Ordinance. In 1985, the State of Texas Legislature amended the enabling statute to allow cities, including the City of Houston, to regulate these sexually oriented businesses previously exempted. The City of Houston then enacted Ordinance 86–323 to regulate those sexually oriented businesses. In this action the Plaintiffs challenge the validity of Ordinance 86–323. The challenge is two-pronged: first, a facial constitutional attack and second, a challenge that the Ordinance impermissibly exceeds the grant of authority from the enabling statute.

Plaintiffs filed an Original Complaint, Application for a Temporary Restraining Order and Applications for Preliminary and Permanent Injunctions on March 31, 1986, to enjoin the Defendants from instituting and carrying out City Ordinance No. 86–323. After a Temporary Restraining Order hearing on April 3, 1986, the Court enjoined the Defendants from enforcing Section 28–123(a)(6) of the Ordinance, denied the Temporary Restraining Order with regard to the other application requirements, and reserved its ruling on the constitutionality of the Ordinance. The Court combined Plaintiffs' Application for a Preliminary Injunction with their Application for a Permanent Injunction and proceeded with a trial on the merits.

After the receipt of numerous exhibits, the testimony of witnesses and the argu-

ment of counsel the Court concludes that Ordinance No. 86–323 is invalid with respect to Sections 28–123(a)(1)(i) + (a)(6) and 28–125(b)(8). The Court hereby permanently enjoins the Defendants from enforcing Sections 28–123(a)(1)(i) + (a)(6) and 28–125(b)(8) of Ordinance No. 86–323. However, the invalidation of the above Sections does not impede the application of the remaining portions of the Ordinance, because the Ordinance contains a severability clause and those Sections are not crucial to the operation of the Ordinance. Ordinance, § 3, p. 28.

Plaintiffs, SDJ, INC., d/b/a SUGAR BABES: W.F.K., INC. d/b/a SUGAR'S; W.F.K., INC. SIX d/b/a SUGAR'S DEJA-VU; T.D.D., GRINGO'S SALOON, INC. d/b/a FANTASIA; 747, INC. d/b/a TEXAS COWGIRLS; TWO GREEKS, INC. d/b/a CANDLELITE LOUNGE; M.B. TEX, ENTERPRISES, INC. d/b/a IMAGI-NATIONS; SPIROS KARMAELEGOS d/b/a TEXAS FILLIES; HI-10, INC. d/b/a HI-10 CABARET; TRUMPS, INC. d/b/a RICK'S CABARET; SOUTHWEST CLUB CO., INC. d/b/A PLAYMATES; SSD, INC. d/b/a RITZ CABARET; ARIS MYLONAS d/b/a BOGEY'S; JIMMY TSAROUHAS d/b/a CRICKET'S; M.E.F. ENTERPRIS-ES, INC., d/b/a CHICS; MKD ENTER-PRISES, INC. d/b/a CHICS; J & J, INC. d/b/a MOULIN ROUGE; NAFPAKTOS, INC. d/b/a PINK PUSSYCAT; VAT, INC. d/b/a YELLOW ROSE OF TEXAS; AL-EXANDRA VIVI BARSAKIS d/b/a WHIP CLUB; Da JOHN, INC. d/b/a DREAM STREET (hereinafter referred to collectively as "Plaintiffs"), are nightclubs offering topless dancing entertainment and presently operating in Houston, Texas.

Defendant, THE CITY OF HOUSTON, is a municipal corporation situated in Harris County, Texas. Defendant, LEE BROWN, is the Chief of Police of the Houston Police Department in Houston, Harris County, Texas. As Chief of Police, Chief Brown is the Director of the Ordinance and is in charge of enforcement of the provisions of the Ordinance, including the issuance, deni-

al and revocation of permits. He is being sued in his official capacity. Defendant, JERRY SMITH, is the City Attorney for the City of Houston, Harris County, Texas. As City Attorney, Jerry Smith is responsible for the prosecution of charges filed in municipal court in Houston, Texas, for violation of the Ordinance and the filing of any injunction pursuant thereto. Jerry Smith is sued in his official capacity as City Attorney.[1]

A Committee on Sexually Oriented Businesses was established in 1982 by the City Council of the City of Houston. Councilman George Grenias was the Chairman of that Committee. The Committee drafted a report in 1983 regarding the need to regulate sexually oriented businesses. *See* Defendants' Exhibit No. 1, Attachment. Councilman Grenias testified that the Committee was formed because of community concern about the location of sexually oriented businesses. Following its creation, the Committee held public hearings, received public and expert testimony on the effects of sexually oriented businesses on surrounding land uses, and held committee session meetings. In 1986, after Article 2372w was amended to include sexually oriented businesses licensed under the Alcoholic Beverage Code, the Committee drafted an amended report. *See* Defendants' Exhibit No. 6. The City Council relied on the 1983 report and the 1986 amended report on the regulation of sexually oriented businesses in adopting the findings to Ordinance No. 86–323. *See* Defendants' Exhibit No. 5.

Before 1985, the Plaintiffs were specifically exempted from Article 2372w, the enabling legislature allowing home-rule cities to pass ordinances regulating "sexually oriented businesses." The 1985 Amendment to 2372w specifically included sexually oriented businesses licensed and permitted to operate under the Alcoholic Beverage Code. Each of the Plaintiffs is licensed and/or permitted to operate pursuant to

---

**1.** The Plaintiffs originally sued the individual Defendants in their official and individual capacities. The Court granted the Plaintiffs' unop-

posed oral motion to amend their Complaint to delete their claim against these Defendants in their individual capacities.

the Alcoholic Beverage Code. Moreover, they all provide entertainment by "topless" dancers.

On or about March 5, 1986, the City Council of the City of Houston passed Ordinance No. 86–323 ("the Ordinance") which is the basis of this dispute. (*See* Appendix I). The Ordinance was passed to regulate sexually oriented businesses by requiring that their owners or operators obtain permits from the City of Houston in order to commence or to continue their operations. The Ordinance provides, as to location, that no enterprise shall operate within 750 feet of a school, church, or licensed day care center. It further provides that an enterprise shall not locate within 1000 feet of another permitted enterprise or within a residential tract that is 75% residential in character. The Ordinance also places restrictions on the signage and exteriors of the enterprises. The Ordinance provides that it shall take affect on June 3, 1986. (Ord., p. 25). The Ordinance also requires that any operator of an existing enterprise who desires to continue its operation on or after June 3, 1986, shall file a permit application with the Director, Chief Brown, or his designee on or before April 4, 1986. Ordinance No. § 4(b). (Ord., 31). The Ordinance further provides that any enterprises, as defined therein, existing as of March 5, 1986, may continue to do business until November 30, 1986, if their permit applications are denied, provided such enterprises timely filed their application prior to April 4, 1986. The Ordinance provides that it shall be unlawful for any person to operate an enterprise without a permit and violations of the Ordinance not covered by state statute constitute a misdemeanor. § 28–133 (Ord., p. 28). Moreover, the City Attorney is authorized to file suit to enjoin violations of the Ordinance. § 28–124 (Ord., p. 28). The Ordinance does not expressly name "topless dancing" clubs as a type of sexually oriented business.

From the owners of the Plaintiffs who testified, the Court finds that topless bars operate from approximately eleven o'clock in the morning until two o'clock the next morning. Most of the clubs serve lunch and dinner. The majority of the profits made by the clubs come from the sale of alcohol. The primary attraction of the clubs is the offering of topless dancing. Topless clubs hire a number of employees: bartenders, disco jockeys, floor masters, doormen, security personnel, cooks, managers, and waitresses. They also hire dancers, who receive a commission based on the percentage of drinks sold and receive tips from customers ranging from five dollars to ten dollars per customer.

Section 5(b) of the Ordinance provides for a six-month grace period in which existing non-conforming businesses may discontinue their operations. Under Section 5(c), the Director "may, in his discretion, grant an extension for operation after November 30, 1986, if the owner of the existing enterprise proves that he is unable to "recoup his investment" in such existing enterprise by that date." Ordinance § 5(c). The provision requires the applicant to file a written request for such extension on or before September 1, 1986. Ordinance § 5(c). The request shall set forth the amount of the owner's investment in the existing enterprise through March 5, 1986; the amount of the investment that has been or will be realized through November 30, 1986; the life expectancy of the existing enterprise; and the existence or nonexistence of lease obligations, as well as any contingency clauses therein permitting termination of the lease. Ordinance § 5(c).

The four factors set out in Section 5(c) include methods of evaluating the value of existing businesses. Real estate appraiser Edward B. Graham testified that there are three approaches to valuation of a business: the cost approach, the income approach and the market approach. Under any of these approaches, the appraiser attempts to take into account the location of the business, the value of the land beneath the business, and the value of the building structure itself.

With regard to the land distance restrictions of the Ordinance, Efraim S. Garcia, Director of the Department of Planning and Development in the City of Houston, testified before City Council on the affect

of sexually oriented businesses on surrounding areas. His testimony along with the 1983 and 1986 reports supports the conclusion that the location of sexually oriented businesses have an adverse impact on schools, churches and licensed day care centers and on surrounding residential property values. *See* Defendants' Exhibit No. 1, Report-Committee on the Proposed Regulation of Sexually Oriented Businesses, 1983, pp. 7–9 ("1983 Report"); Defendants' Exhibit No. 6, Amended Report–Committee on the Proposed Regulation of Sexually Oriented Businesses, 1986, pp. 6–11 ("1986 Report"). Moreover, the evidence demonstrates that the location of sexually oriented businesses and the exterior appearance, including signage, of those businesses have an adverse impact on minors. *See* Defendants' Exhibit No. 1, 1983 Report, pp. 7, 8.

The Defendants presented testimony, by way of charts, showing that alternative location sites were available for the Plaintiffs. *See* Defendants' Exhibit No. 6, 1986 Report, p. 10; Defendants' Exhibit Nos. 14–33. Out of the twenty-three Plaintiffs listed on the Complaint, seven of the clubs have been approved under the application procedure of the Ordinance. *See* Defendants' Exhibit No. 8. Most of the remaining sixteen clubs have double violations: nine violate the distance requirement to schools, churches, and licensed day care centers; three violate the distance requirement to another sexually oriented business; eight violate the residential requirement; ten have sign violations; six have color requirement violations; and one club failed to file an application. *See* Defendants' Exhibit No. 8.

Plaintiffs contend that the Ordinance violates 42 U.S.C. § 1983 and the First, Fifth, and Fourteenth Amendments to the United States Constitution in addition to violations of Article III, § 35 of the Texas State Constitution. This Court accordingly has jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1343 pertaining to actions for deprivation of civil rights. The Court has pendent jurisdiction of the state law claims asserted herein because such claims derive from a common nucleus of facts with the federal claims and the Plaintiffs would ordinarily be expected to try them all in one proceeding. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Venue of this action is proper under 28 U.S.C. § 1391 because all Defendants reside in, and all claims alleged herein arose in, the Southern District of Texas, Houston Division. 28 U.S.C. § 1391 (1984). The Plaintiffs' Application for a preliminary injunction is consolidated with the permanent injunction trial on the merits. Fed.R.Civ.P. 65(a)(2).

■ Plaintiffs challenge the validity of Ordinance No. 86–323 on various federal and state law grounds. Defendants do not explicitly challenge the Plaintiffs' standing to bring this lawsuit.[2] The Plaintiffs meet all of the prerequisites for constitutional standing in this case. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (The requirements are (1) that some actual or threatened injury is suffered; (2) that the existing injury can be traced to the Defendants' challenged action, which is putatively illegal; and (3) that the injury will likely be redressed by a favorable decision.)

■ The Plaintiffs have launched a number of facial attacks on the ordinance. Initially, Plaintiffs claim that the ordinance was enacted to ban all topless dancing, which is protected by the first amendment. Generally, local land-use restrictions im-

---

**2.** Defendants do challenge the Plaintiffs standing to raise issues of non-parties to this lawsuit; such as the Alley Theatre and the possible effects this Ordinance may have on its more revealing theatre productions. However, as the Supreme Court stated in *Schad, et al., v. Borough of Mount Ephram,* opponents who challenge an ordinance on the basis of the first amendment are "entitled to rely on the impact of the ordinance on the expressive activities of others as well as their own." *Schad, et al., v. Borough of Mount Ephram,* 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981). For the same reason, the Plaintiffs in this lawsuit are entitled to raise similar issues.

posed under a quasi-legislative process are governed only by limitations on the legislative process. *Horizon Concepts, Inc. v. City of Balch Springs, et al,* 789 F.2d 1165 (5th Cir.1986) (The standard for review of land-use ordinances is whether they are arbitrary and capricious.) However, the seemingly broad power of local government to control land use is not unchallengeable; it must be exercised within constitutional limits. *Schad, et al., v. Borough of Mount Ephram,* 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981). The standard of review is determined by the nature of the right assertedly threatened or violated. *Id.* In the case before this Court, Plaintiffs claim that the land-use ordinance bans their first amendment right to freedom of expression. Specifically, Plaintiffs claim that they have a protected liberty interest in employing topless dancers in their clubs. Topless dancing, like nude dancing, is not without its first amendment protections from governmental regulation. *Schad,* 452 U.S. at 66, 101 S.Ct. at 2181. When a land-use ordinance infringes upon a protected liberty, it must be narrowly drawn and it must further a substantial governmental interest to satisfy constitutional protections. *Schad,* 452 U.S. at 68, 101 S.Ct. at 2182.

Ordinances enacted for the purpose of restricting speech on the basis of content presumptively violate the first amendment. *City of Renton, et al., v. Playtime Theatres, Inc., et al.* — U.S. —, 106 S.Ct. 925, 928, 89 L.Ed.2d 29, *reh'g denied,* — U.S. —, 106 S.Ct. 1663, 90 L.Ed.2d 205 (1986). However, time, place and manner regulations, which are "content-neutral," are acceptable where they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication. *Renton,* 106 S.Ct. at 928. Initially, the Court must determine whether the ordinance is "content-based" or "content-neutral." An ordinance is considered content-neutral where the predominant concerns of the legislature are with the adverse secondary effects of activities and not the content of the activities. *Renton,* 106 S.Ct. at 929. In this case the preamble of the ordinance

shows that the legislature was concerned with the adverse secondary effects of sexually oriented businesses on property values, churches, schools, and day care centers; the criminal activity in areas surrounding those businesses; and the mental health of minors who come into contact with adult material on night club signs. Houston, Texas Ordinance No. 86–323 (March, 1963) (*See* Defendants' Exhibit No. 5.) Ordinance No. 86–323 regulates the location of sexually oriented businesses. It does not ban them from operation. This Court concludes that the Houston Ordinance is not aimed at banning or restricting topless dancing, but rather it concerns relocation of sexually oriented businesses, including topless dancing clubs, to curb their secondary effect on the surrounding community.

Plaintiffs launch their primary attack against the ordinance on grounds that the City has not proven a substantial governmental interest in relocating topless bars. The burden is on the City to show that a substantial governmental interest exists in regulating topless dancing bars and that the ordinance is narrowly drawn to serve that interest. *City of Renton, et al., v. Playtime Theatres, Inc., et al.,* — U.S. —, 106 S.Ct. 925, 928 *reh'g denied,* — U.S. —, 106 S.Ct. 1663, 90 L.Ed.2d 205 (1986). A governmental regulation is sufficiently justified if it is within the constitutional power of the government and furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged first amendment freedoms is no greater than is essential to the furtherance of that interest. *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).

A city's interest in attempting to preserve the quality of urban life is one that must be accorded the highest respect. *Renton,* 106 S.Ct. at 930; *Young, et al., v. American Mini Theatres, Inc., et al.,* 427 U.S. 50, 71, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 *reh'g denied,* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976). The first

amendment does not require a city before enacting such an ordinance to conduct new studies or produce evidence independent of that already generated by other cities, so long as the evidence relied upon is reasonably believed to be relevant to the problem that the City addresses. *Renton,* 106 S.Ct. at 931. The Court concludes that the hearings and studies conducted by the City Council of Houston are sufficient to establish that sexually oriented businesses have an adverse impact on residential property, churches, schools, and day care centers. The evidence collected by the City Council, in its Report of 1983 on sexually oriented businesses, and confirmed in its Report of 1986, is sufficiently comprehensive for the City to establish that topless dancing clubs have the same effect on land-use and secondary criminal activities as other sexually oriented businesses.

Plaintiffs challenge the basis for the conclusions given to this Court by the expert witnesses, who also testified before the City Council. They contend that there is no basis in fact for the City's findings that topless bars affect surrounding property values, affect residential neighborhoods, or affect minors. However, the evidence establishes that the expert witnesses relied on their experiences and understanding of the Houston market in determining the effect of sexually oriented businesses on surrounding property values. The fact that other experts hold conflicting opinions on the effects of sexually oriented businesses on property values is irrelevant to the Court's first amendment inquiry. It is the legislature, and not the courts, which determines how much testimony is enough to require city action in redressing a perceived problem. The Courts role is to determine whether the evidence the City relies upon is reasonably believed to be relevant to the problem being addressed by the City. *Renton,* 106 S.Ct. at 931. This may include the experiences of other cities with respect to sexually oriented businesses. *Id.* The Court finds that the City has met its burden of demonstrating a problem requiring the exercise of its police supervisory powers to provide for the welfare of its citizens.

Plaintiffs also argue that the legislature enacted Ordinance 86–323 to get rid of topless bars. However, an alleged improper legislative motive does not support invalidation of an ordinance on constitutional grounds. *O'Brien,* 391 U.S. at 383, 88 S.Ct. at 1682. The Court concludes that the City of Houston has demonstrated a substantial governmental interest in instituting land-use restrictions on sexually oriented businesses.

Plaintiffs challenge the Ordinance on grounds that it is unconstitutionally vague. An ordinance is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is proscribed by the Ordinance. *Stansberry v. Holmes,* 613 F.2d 1285, 1288, *reh'g denied,* 616 F.2d 568, *cert. denied,* 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (5th Cir.1980). An ordinance may also be declared vague if the application of it causes arbitrary and erratic arrests or convictions. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

The Plaintiffs argue they will be driven out of business because they are unsure whether the statute applies to their establishments. The real issue is whether the term "sexually oriented business" gives fair notice to owners and operators of topless dancing clubs that they are subject to the proscriptions of the Ordinance. The Ordinance requires every owner or operator of an "enterprise" to obtain a permit before doing business in the City of Houston. Houston, Tex. Ordinance No. 86–323, § 28–122 (March 5, 1986). The Ordinance defines enterprise as an "adult cabaret, adult encounter parlor, adult lounge, adult modeling studio or any establishment whose major business is the offering to customers a product or service which is intended to provide sexual stimulation or sexual gratification to such customers...." Ordinance, pp. 8, 9. The Ordinance, by way of its caption, applies to all sexually oriented enterprises. In *Stansberry v. Holmes,* the Court of Appeals for the Fifth Circuit held that the term "sexually orient-

ed commercial enterprise" was not vague or overly broad because the definition was limited to businesses "whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification." *Stansberry*, 613 F.2d at 1290; *see accord, Memet v. State*, 642 S.W.2d 518, 522–23 (Tex.Civ.App. 14th Dist.1982) (where the state court struck down a vagueness challenge to the definition of "sexually oriented enterprises.") Similarly, the term "enterprise" is limited to a business whose major activity is the offering to customers of a service which is intended to provide "sexual stimulation or sexual gratification" to customers. Based upon the evidence adduced at trial, it is undisputed, and the Court concludes that the major "drawing card" for the Plaintiffs' businesses is the topless dancers. More than one of the cabaret owner's who testified described the activities performed by topless dancers at their clubs. That testimony convinces the Court that those activities are sexually oriented.

The definition of enterprise is further qualified because the service must be distinguished by emphasis on matters depicting "specified sexual activities" or "specified anatomical areas." [3] Ordinance, p. 9. By inserting the phrase "whose major business," and the further emphasis on matters depicting "specified anatomical areas," the City Council has excluded all businesses whose activities might incidently cause sexual stimulation such as the Alley Theatre. *See Stansberry*, 613 F.2d at 1290. The clear focus of the Ordinance is directed toward a business that routinely provides sexually-oriented entertainment. For the above reasons, fair notice is given to the establishments that they are subject to regulation under the Ordinance.

 Plaintiffs contend that the Ordinance delegates overly broad discretion to the Director to grant or deny an application for a permit. An ordinance may be overly broad if it allows standardless discretion in the Director to grant or deny a permit.

*Grayned v. City of Rockford*, 408 U.S. 104, 113, 92 S.Ct. 2294, 2301, 33 L.Ed.2d 222 (1972). The Ordinance provides that the "Director shall issue a permit to the applicant unless one or more of the following conditions exist...." Ordinance, § 28–125(b). The first of the conditions is the applicants location with respect to a school, church or licensed day care center. The Ordinance requires applicants to be 750 feet away. Ordinance, § 28–125(b)(1). The distance is measured in a straight line from the nearest point on the property line of the applicant's enterprise to the nearest point on the property line of the school, church or licensed day care center. Ordinance, § 28–125(b)(1). The Court finds that the language of Section 28–125(b)(1) confers no discretion to the Director to determine violation of that section. The same analysis applies to Section 28–125(b)(2), which requires that the applicant's enterprise be located over 1000 feet from any other enterprise for which there is a permit. Ordinance, § 28–125(b)(2).

Plaintiffs argue that Subsection (b)(3), which disallows a permit if seventy-five percent or more of the tracts within a circular area with a radius of 1000 feet are residential, vests unreasonable discretion in the hands of the Director. Ordinance 28–125(b)(3). Plaintiffs base their contentions on the definition of "tract." Tract is defined in the Ordinance as a "contiguous parcel of land under common ownership, whether situated within the City or not." Ordinance, § 28–121, p. 12. After listening to testimony, observing diagrams of the circular area, and having the benefit of oral argument, the Court concludes that the requirement of subsection (b)(3) does not delegate unbridled discretion to the Director to grant or deny a permit.

 In addition to the above, Plaintiffs assert that Subsections (b)(6) and (b)(8) are without adequate standards to guide the Director's actions. Subsection (b)(6) re-

---

**3.** Both terms—specified anatomical areas and specified sexual activities—are defined in the Ordinance. Ordinance p. 12. The Plaintiffs' businesses undoubtedly offer a service (topless dancing) which falls within the definition of specified anatomical areas because they display the female breast save a tiny opaque pasty or two. Ordinance, p. 12, Section (1) (iii).

quires the applicant to comply with Section 28–129 (exterior portions of the establishment) and Section 28–130 (signage of the establishment). Ordinance, § 28–125(b)(6), 129, 130. Section 28–129 requires that the exterior portions of establishment be free from flashing lights, words, lettering, photographs, silhouettes, drawings, or pictorial representations and, with few exceptions, the exterior portions of the establishment must be painted a single achromatic color. Ordinance, § 28–129(a)–(d). Section 28–130 requires that the establishment only display one "primary sign" and one "secondary sign." Ordinance, § 28–130(a)–(f). The language of neither Section is vague for the same reasons as Section 28–125(b)(3). The Court concludes that the language adequately guides the Director in carrying out his duty to approve or disapprove a permit based on the applicant's exterior decoration or signage. The Plaintiffs' main attack regards the City's asserted need for the above regulations. That issue will be addressed in a latter portion of this opinion. Plaintiffs have argued generally that the statute is overly broad because it is not narrowly drawn to serve a legitimate governmental interest with only minimal intrusion upon first amendment interests. *Schad*, 452 U.S. at 75, 101 S.Ct. at 2186; *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1216 (5th Cir.1982). Plaintiffs challenge the signage provision, exterior provision, and the distance provisions on grounds that they are beyond the scope of minimal intrusion upon first amendment interests.

■ With regard to the exterior condition requirements and the signage requirement, the Court concludes that the government has met that burden. The regulations affecting the exterior portion and signage of sexually oriented businesses are valid if they are directed at the signs themselves rather than at the protected activities. *See Borrago v. City of Louisville*, 456 F.Supp. 30, 32 (W.D.Ky.1978). A restriction on the signage and exterior portions which allows modest, subdued advertising is appropriate in order to prevent a decline in the values of surrounding properties, and thus prevent deterioration of neighborhoods. *See Basiardanes*, 682 F.2d at 1219. Unlike the Ordinance in *Basiardanes*, The City of Houston Ordinance does not completely ban topless bars from advertising. It merely places limits on the number, size and detail of the signs. Regulations on the exterior portions and signage of sexually oriented businesses that serve a legitimate public interest, such as the prevention of detrimental effects on minors, are not unconstitutional. *Borrago v. City of Louisville*, 456 F.Supp. 30, 32 (W.D.Ky.1978); *see also Basiardanes*, 682 F.2d at 1219.

■ Plaintiffs further assert that the Ordinance's distance requirements and the manner in which they are measured by the Director are beyond the scope of minimal intrusion. Plaintiffs claim that the manner of measurement (from boundary line to boundary line) is overly broad in light of a less stringent manner of measurement in the Alcoholic Beverage Code, which also regulates Plaintiffs' distance from schools and churches. Tex.Alco.Bev.Code Ann. § 109.33 (Vernon 1978). The AB Code measures the distance requirement from the business' front door; out to the property line; following the public thoroughfares to the property line of the school or church; and then up to its front door. Yet, the method in which a city decides to resolve apparent problems within its boundaries is not subject to constitutional attack unless it unreasonably infringes upon a protected right. Plaintiffs complain of the City's method, not because the distance leaves them no place to relocate, but on the grounds that it does not conform to the state law regulating businesses licensed under the Alcoholic Beverage Code. The Court concludes that the Plaintiffs' unhappiness with the alternate method of measurement does not amount to a constitutional challenge. Consequently, Plaintiffs' challenge to the Ordinance on grounds of overbreadth are denied.

■ Plaintiffs also contend that the Ordinance is not narrowly drawn to protect first amendment interests. The City of Houston must prove that the Ordinance

does not unreasonably limit alternative avenues of communication. *Renton,* 106 S.Ct. at 928. The Defendants have met their burden to demonstrate viable alternative methods of communication by showing that adequate alternative sites exist where non-conforming topless bars may relocate. Contrary to Plaintiffs' assertions, the law does not require the Defendants to confirm that the sites are economically and logistically viable, except as it relates to the restrictions in the Ordinance (750 feet from a school, church or licensed day care center; or 1000 feet from another sexually oriented business). *15192 Thirteen Mile Road, Inc. v. City of Warren,* 626 F.Supp. 803, 814 (E.D.Mich.1985); *see also Basiardanes v. City of Galveston,* 682 F.2d 1203, 1214 (5th Cir.1982). A first amendment violation is not established by the fact that the Plaintiffs may have to "fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees...." *Renton,* 106 S.Ct. at 932. "The inquiry for first amendment purposes is not concerned with economic impact." *Renton,* 106 S.Ct. at 932, *citing Young,* 427 U.S. at 84, 96 S.Ct. at 2459 (Powell, J., concurring).

▮ Plaintiffs contend that the Ordinance causes an unlawful taking of property where existing topless clubs do not meet the application requirements. Section 5(b) grants a six-month grace period, until November 30, 1986, to existing non-conforming businesses before they are required to discontinue their operations. Ordinance § 5(b), p. 31. Under Section 5(c), the Director "may, in his discretion, grant an extension for operation after November 30, 1986, if the owner of the existing enterprise proves that he is unable to recoup his investment in such existing enterprise by that date." Ordinance § 5(c), p. 31. There are three methods that are employed by cities to resolve non-conforming land-uses. One is to include a grandfather clause exempting existing businesses, the second method is to compensate owners for the taking of their property, and the third is to amortize the value of the property over a period of time. *See Ellwest Stereo Theatres, Incorporated of Texas v. Byrd,* 472

F.Supp. 702, 706 (N.D.Tex.1979). The Ordinance does not characterize Section 5(b) as an amortization provision. However, the parties generally agree that Section 5(b) is an amortization clause. A general definition of amortize is the allocation of the cost or other basis of an intangible asset over its estimated useful life. *Black's Law Dictionary,* Special Deluxe 5th Edition—1979. The Ordinance does not define the term "recouping investment" used in Section 5(c). A plain meaning definition of recouping investment is to recover an expenditure, made to acquire property or other assets in order to produce revenue, by a subsequent gain. *Black's Law Dictionary,* Special Deluxe 5th Edition—1979. Amortization is regarded as a viable alternative. *Hart Book Stores, Inc., et al v. Edministen, et al.,* 612 F.2d 821, 830 (4th Cir.1979); *Lubbock Poster Co. v. City of Lubbock,* 569 S.W.2d 935 (Tex.Civ.App. 1978, writ ref'd n.r.e.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). An Ordinance which terminates, over time, preexisting nonconforming uses should be carefully scrutinized where first amendment interests are affected. *Purple Onion, Inc., et al. v. Jackson,* 511 F.Supp. 1207, 1224 (N.D.Ga.1981). Under any set of factors, the standard for amortizing a particular use must be reasonable and must satisfy the concerns of due process. *Art Neon Co., et al. v. City and County of Denver,* 488 F.2d 118, 121 (10th Cir.1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).

Plaintiffs contend that the application of Sections 5(b) and 5(c) amount to a taking of their property without due process of law. The basis for the Plaintiffs' conclusion is that Sections 5(b) and (c) do not provide standards upon which the Director could adequately compensate them for their property. Plaintiffs also contend that amortization provisions are unfavored by the Courts because they may, in combination with other land-use restrictions, limit access to speech protected by the first amendment.

▮ The Court is aware that some of the Plaintiffs have made large investments

into their businesses. However, Section 5(b) allows those owners to recoup their investment during a six-month period. The ultimate question is whether the City's six-month amortization period is reasonable. This Court concludes that it is reasonable for several reasons. First, the Court finds that amortization is a valid method of eliminating existing nonconforming uses of land. It is generally accepted that preexisting nonconforming uses are not to be perpetual. *Validity of Provisions for Amortization of Nonconforming Uses,* 22 ALR 3rd 1134, 1141 and 1145 (1968). Use of a reasonable amortization scheme is not only a viable, but also an equitable, means of reconciling the conflict of interest between the public and the nonconforming use. *See City of Los Angeles v. Gage, et al.,* 127 Cal.App.2d 442, 461, 274 P.2d 34, 84 (1954).

■ Second, with regard to adequate compensation, the Court finds the Plaintiffs' assertions unsupportable. Not every regulation which has an adverse economic effect on businesses violates the fifth amendment as an unlawful taking. *Andrus v. Allard,* 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979). The Plaintiffs has six months to minimize their losses and to recoup their investments. If a sexually oriented business cannot recoup its investment within six months, Section 5(c) of the Ordinance provides an avenue for the extension of that time.

There is no specific evidence which shows that the Plaintiffs will be unable to recoup their investment within six months. The 1983 Report and the 1986 Report drafted by the Committee on the Regulation of Sexually Oriented Businesses shows that no evidence was presented to the City Council on the time period necessary for sexually oriented businesses to discontinue their operations. In *Hart Book Stores* the Seventh Circuit Court of Appeals noted that amortization clauses ranging from three months to five years were constitutional. *Hart Book Stores,* 612 F.2d at 830. Where a sexually oriented business cannot recoup its investment in six months, the City has provided an added remedy: Section 5(c). The Plaintiffs contend that re-

couping investment is an inadequate measure of compensation. However, recoupment of investment is the major consideration in determining the reasonableness of an amortization provision. *City of University Park v. Benners,* 485 S.W.2d 773, 779 (Tex.1972).

Third, this case is unlike *Schad* or *Basiardanes* in that there are adequate alternative sites for relocation of the Plaintiffs' businesses. *See contra, Spiegel v. City of Houston,* 636 F.2d 997 (5th Cir.1981). An ordinance which otherwise has a substantial basis for its passage does not violate due process merely because of the inclusion of an amortization clause.

■ Plaintiffs claim that the Ordinance violates the equal protection rights of all topless dancing bars. Where governmental action affects first amendment freedoms, that action is subject to the four prong test set forth in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). The regulation must be within the constitutional power of the government; it must further an important or substantial governmental interest; the regulation must be unrelated to the suppression of free expression; and the incidental restrictions on first amendment freedoms must be no greater than is essential to further that interest. *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679. As pointed out earlier, the City has adequately met the first three prongs of the *O'Brien* test. With regard to the fourth element, various provisions of the Ordinance are subject to challenge. Section 28–123(a)(6) requires the intended operator to furnish a list of all employees or contractors involved in providing the services of the enterprise. Ordinance, § 28–123(a)(6). That request infringes on first amendment freedoms without legitimate justification. While City government officials may have some legitimate interest in assuring that persons of proper age are employed within these enterprises, that interest is outweighed by the chilling or suppressive effect that Section 28–123(a)(6) would have on potential employees and contractors of topless dancing bars. Section 28–123(a)(6) is unconsti-

**1372**

tutional. *Genusa, et al, v. City of Peoria,* 619 F.2d 1203 (7th Cir.1980).

██ Plaintiffs contend that Section 28–123(a)(1)(i), which requires disclosure of any and all aliases of the intended operator, is also unconstitutional as an invasion of the right to privacy. The disclosure provisions of the ordinance must be justified by the zoning interest expressed in the Ordinance. *Genusa,* 619 F.2d at 1216. The alias disclosure requirement is not justified by the City's interest in relocating topless dancing bars. Section 28–123(a)(1)(i) is therefore invalid.

██ Pursuant to the right to privacy, Plaintiffs claim that Section 28–125(b)(8) (which requires the applicant to have "fully complied with all state, federal and local laws or regulations affecting the conduct of its business" before receiving a permit) does not further a legitimate interest unrelated to the suppression of free expression. A similar disclosure requirement was struck down in *Genusa* where the Court of Appeals for the Seventh Circuit held that the city is required to enforce its laws and regulations in an evenhanded manner and cannot selectively enforce those laws against a bookstore because of the content of its books. *Genusa,* 619 F.2d at 1218. The same rationale applies to City Ordinance 86–323. The compliance with the other laws requirement in the Ordinance surely deals topless dancing clubs an uneven hand based solely on the content of their activities. As a result, Section 28–125(b)(8) is invalid.

Plaintiffs argue that the enabling bill, Article 2372w, of Ordinance 86–323 is invalid because its caption does not give fair notice of the content of the bill. Tex.Rev. Civ.Stat.Ann. Art. 2372w (Vernon 1979 + Supp.1985); *amended by* S.B. No. 106, 69th Leg., Reg.Sess. (Tex.1985).

Article III, § 35 of the Texas Constitution provides:

No bill ... shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed.

TEX.CONST. art. III, § 35.

██ Section 35 requires that a bill's caption be specific enough to give a reader fair notice of the subject and contents of the bill. *Ex parte Crisp,* 661 S.W.2d 944, 946 *Reh'g denied,* 661 S.W.2d 956 (Tex. Crim.App.1983).

██ The public has a right under Texas law to be advised of the subject of each particular bill in order to prevent fraud and deception by the insertion of obnoxious clauses which might otherwise be engrafted in it and become law. *White v. State,* 440 S.W.2d 660, 664 (Tex.Crim.App.1969).

██ Article 2372w, the enabling statute for Ordinance 86–323, was submitted to the legislature and captioned as follows:

An act relating to the authority of cities and counties to regulate the location of certain sexually oriented commercial activities; providing penalties.

Tex.Rev.Civ.Stat.Ann. Art. 2372w (Vernon 1979 + Supp.1985).

Plaintiffs challenge Article 2372w on grounds that the term "sexually oriented commercial activities" is vague and that the article did not give them fair notice, at the time it was introduced, that their establishments were subject to regulation. The Court disagrees. As stated earlier in these conclusions, the term sexually oriented commercial activities is susceptible to a plain meaning definition. The title of Article 2372w sufficiently alerted the public that the subject of the article was the location regulation of commercial businesses engaged in sexually oriented conduct. The caption of Article 2372w meets the notice requirements of Article III, Section 35.

██ Plaintiffs also contend that the caption of the amendment to Article 2372w did not give them fair notice that their establishments, which are licensed under the Alcoholic Beverages Code, were no longer exempt from regulation.[4] Tex.Rev.

---

**4.** The caption of the 1985 amendment reads: An Act relating to local regulation of certain sexually oriented business activities: providing penalties. . . .

Tex.Rev.Civ.Stat.Ann. art. 2372W (Vernon 1979 + Supp.1985).

Civ.Stat.Ann. Art. 2372w (Vernon 1979 + Supp.1985) (The original 1979 Article was amended in 1985 to include sexually oriented businesses which were licensed by the Alcoholic Beverage Code). Section 35 of the Texas Constitution does not require that each caption detail all of the changes and additions of a particular amendment. *Smith v. Davis*, 426 S.W.2d 827, 833 (Tex. 1968). It only requires that the subject of the bill or amendment be expressed in the title. *Smith*, 426 S.W.2d at 833. That was done in the amendment to Article 2372w.

Plaintiffs challenge Ordinance 86–323 on grounds that it exceeds the statutory grant of Article 2372w, because the language in the Ordinance (all commercial enterprises that are sexually oriented) is broader than the language in Article 2372w. (similar commercial enterprises to massage parlors, nude studios, modeling studios and love parlors).

Article 2372w limits the power of cities to regulate the location of sexually oriented businesses to enterprises, such as "massage parlors, nude studios, modeling studios, love parlors, *and other similar commercial enterprises whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer* (emphasis added)." Tex.Rev.Civ.Stat.Ann. Art. 2372w (Vernon 1979 + Supp.1985).

City of Houston Ordinance 86–323 (ord., p. 2) states:

> Article 2372w of the Revised Civil Statutes of the State of Texas authorizes home-rule cities to adopt, by ordinance, regulations restricting the location of commercial enterprises whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer ...

Houston, Texas Ordinance 86–323 (March 5, 1986). Under Texas law, no ordinance can be legally enacted by the governing body of a city which conflicts or is incon-sistent with the state enabling statute. *Zachary v. City of San Antonio*, 157 Tex. 551, 305 S.W.2d 558, 561 (1957); *Berry v. City of Fort Worth*, 132 Tex. 599, 124 S.W.2d 842 (1939); *Royer v. Ritter*, 531 S.W.2d 448, 449 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.). Article 2372w does not require the regulated business to be a massage parlor, nude studio, modeling studio or love parlor. It merely requires that the commercial enterprise be similar to those sexually oriented businesses in one respect: that the business enterprise's major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer. Plaintiffs contention that their topless dancing bars do not provide a service which is intended to provide sexual stimulation or sexual gratification to its customers is untenable. The Court concludes that there is no conflict or inconsistency in the coverage of Ordinance 86–323 from its enabling legislation.

Plaintiffs also contend that the City of Houston is prohibited or preempted by the Texas Alcoholic Beverage Code from regulating sexually oriented businesses with liquor licenses pursuant to Ordinance No. 86–323. However, the fact that a business has a liquor license does not insulate it from other forms of municipal regulation. *Banknote Club and Stans Boilermaker v. City of Dallas*, 608 S.W.2d 716 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). Ordinance No. 86–323 does not regulate the sale or possession of alcoholic beverages; conduct which is preemptive of state law. The fact that Plaintiffs can comply with the Texas Alcoholic Beverage Commission rules as to distances from churches or schools does not immunize them from other land use regulations, nor does this type of regulation conflict with the Texas Alcoholic Beverage Code, because the Ordinance does not regulate the land use of these businesses on the basis of their alcohol use, but regulates them as a result of the secondary affects they have

on surrounding areas. *Young, Wilkinson & Roberts v. City of Abilene,* 704 S.W.2d 380 (Tex.App. 11 Dist.1985, writ ref'd n.r. e.). Plaintiffs' claim of preemption must fall for the foregone reasons.

■ Section 3 of the Ordinance provides that "if any provision, section, subsection, sentence, clause, or phrase of this Ordinance, or the application of same to any person or set of circumstances is for any reason held to be unconstitutional, void or invalid, the validity of the remaining portions of this Ordinance or their application to other persons or sets of circumstances shall not be affected...." For the above reason, the Court's invalidation of Sections 28–123(a)(1)(i) + (a)(6) and 28–125(b)(8) does not invalidate the entire Ordinance. The above Sections shall be severed from the Ordinance.

In conclusion, the Court finds that Ordinance No. 86–323 is a valid exercise of the City of Houston's police powers. The Ordinance addresses substantial governmental interests and is tailored to affect those interests with minimal intrusion on first amendment protections. The land-use restrictions in the Ordinance are content neutral and designed to serve the City's interest in regulating sexually oriented businesses. The City's Ordinance is not unconstitutionally vague with regard to its definitions and its application. Other than the disclosure requirements noted above, the Ordinance is sufficiently narrowly drawn to meet its purpose without undue restrictions on first amendment interests: it provides for adequate compensation for preexisting nonconforming businesses while serving the public interest in alleviating the adverse secondary effects of sexually oriented businesses on the surrounding community. Accordingly,

It is ORDERED, ADJUDGED and DECREED that Sections 28–123(a)(1)(i) + (a)(6) and 28–125(b)(8) are unconstitutional and the Defendants are permanently enjoined from applying those Sections.

It is further ORDERED, ADJUDGED and DECREED that Sections 28–123(a)(1)(i) + (a)(6) and 28–125(b)(8) are severed from the City of Houston Ordinance 86–323.

It is further ORDERED, ADJUDGED and DECREED that Plaintiffs Application for a Permanent Injunction with regard to the remaining portions of the City Houston Ordinance 86–323 is hereby DENIED.

The Clerk shall file this Order and provide a true copy to counsel for all parties.

### APPENDIX I

City of Houston, Texas Ordinance 86–323 (March 5, 1986)

*Mayor's Office*

To the Honorable City Council of the City of Houston:

In accordance with the provisions of Article VII, Section 7 of the Charter of the City of Houston, I submit and introduce to you the ordinance set out below with the request that it be passed finally on the date of its introduction. There exists a public emergency requiring such action and I accordingly request that you pass the same if it meets with your approval.

DATE: *March 5*, 19 *86* Mayor of the City of Houston

CITY OF HOUSTON ORDINANCE NO. *86-323*

AN ORDINANCE AMENDING SECTION 28-35 OF THE CODE OF ORDINANCES OF THE CITY OF HOUSTON, TEXAS BY ENACTING A NEW ARTICLE III OF CHAPTER 28; PROVIDING FOR THE REGULATION OF THE LOCATION OF CERTAIN SEXUALLY ORIENTED BUSINESSES; PROVIDING FOR THE REGULATION OF THE EXTERIOR PORTION AND SIGNAGE OF SEXUALLY ORIENTED BUSINESSES, ADULT BOOKSTORES, AND ADULT MOVIE THEATRES; MAKING VARIOUS PROVISIONS AND FINDINGS RELATED TO THE SUBJECT; PROVIDING FOR SEVERABILITY; AND DECLARING AN EMERGENCY.

\* \* \* \* \* \*

WHEREAS, Article 1175, Section 22, of the Revised Civil Statutes of the State of Texas authorizes home-rule cities to regulate the location and control the conduct of, among other things, theatres, moving picture shows, vaudeville shows, and all places of public amusements; and

WHEREAS, Article 1175, Section 23, of the Revised Civil Statutes of the State of Texas authorizes home-rule cities to license any lawful business, occupation or calling that is susceptible to the control of the police power; and

WHEREAS, Article 1175, Section 24, of the Revised Civil Statutes of the State of Texas authorizes home-rule cities to license, regulate, control or prohibit the erection of signs or billboards as may be provided by charter or ordinance; and

WHEREAS, Article 1175, Section 34, of the Revised Civil Statutes of the State of Texas, among other things, authorizes home-rule cities to enforce all ordinances necessary to protect health, life and property, and to preserve and enforce the good government, order and security of such cities and their inhabitants; and

WHEREAS, Article 2372w of the Revised Civil Statutes of the State of Texas authorizes home-rule cities to adopt, by ordinance, regulations restricting the location of commercial enterprises whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer; and

WHEREAS, the City Council Committee on the Regulation of Sexually Oriented Commercial Enterprises heard testimony from proponents and opponents of such enterprises at public hearings held on November 4, 1982, November 11, 1982, November 22, 1982, December 15, 1982, May 25, 1983, June 1, 1983, and June 2, 1983; October 25, 1983 and

WHEREAS, the Committee on the Regulation of Sexually Oriented Commercial Enterprises has compiled its findings in a report to Council; and

WHEREAS, City Council finds that churches and schools are centers of family oriented activities and therefore enhance the quality of life in surrounding areas; and

WHEREAS, City Council finds that sexually oriented commercial enterprises can exert a dehumanizing influence on persons attending churches or schools in the surrounding area; and

WHEREAS, City Council finds that a concentration of sexually oriented commercial enterprises can contribute to a decline in the value of surrounding properties; and

WHEREAS, City Council finds that a concentration of sexually oriented commercial enterprises can contribute to an increase in criminal activities in surrounding areas; and

WHEREAS, City Council finds that a sexually oriented commercial enterprise can contribute to the impairment of the character and quality of a surrounding residential neighborhood; and

WHEREAS, City Council finds that the signs and exterior portions of sexually oriented commercial enterprises, adult bookstores, adult movie theatres and massage establishments can be detrimental to the mental health of minors viewing such signs and exterior portions; and

WHEREAS, on the basis of the foregoing findings, which are set forth in the preamble thereof and adopted therein, the City Council adopted Ordinance No. 83–1812 (now codified, as amended, as Section 28–35 of the Code of Ordinances, Houston, Texas); and

WHEREAS, the 69th Texas Legislature, 1985 adopted Senate Bill 106, which amends Art. 2372w of the Revised Civil Statutes of Texas, so that premises holding alcoholic beverage permits and licenses may be included in the scope of land use regulations adopted thereunder for sexually oriented commercial enterprises; and

WHEREAS, the City Council Committee on the Regulation of Sexually Oriented Commercial Enterprises heard testimony

regarding the amendment of Ordinance 83–1812 at a public hearing on December 17, 1985; and

WHEREAS, the Committee has compiled its findings in a supplemental report to Council; and

WHEREAS, the City Council finds that the findings previously adopted remain valid; and

WHEREAS, the City Council finds that the sexually oriented commercial enterprises having alcoholic beverage licenses and permits exert the same influences on churches and schools, have the same effect on property values, and contribute in the same manner to criminal activities as do those which do not serve alcohol, and that they should be included in the scope of the land use regulations for sexually oriented commercial enterprises; and

WHEREAS, the City Council finds that sexually oriented commercial enterprises exert the same influences on day care centers as on churches and schools, and that day care centers should be afforded the same degree of land use protection; and

WHEREAS, experience in the operation of Ordinance 83–1812 that has been gained over the past two years has demonstrated certain administrative improvements and clarifications that could be implemented; and

WHEREAS, the City Council desires to readopt the City's Sexually Oriented Commercial Enterprise regulations in order to (1) include establishments serving alcohol within the scope of land use controls (2) afford protection for day care centers and (3) effect certain administrative changes and clarifications in the operation thereof; NOW, THEREFORE,

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF HOUSTON, TEXAS:

Section 1. That the findings and recitations set out in the preamble to this Ordinance are found to be true and correct and they are hereby adopted by the City Council and made a part hereof for all purposes.

Section 2. That Section 28–35 of the Code of Ordinances, Houston, Texas, is hereby amended to constitute Article III of Chapter 28 of the Code of Ordinances, which reads as follows:

"ARTICLE III

SEXUALLY ORIENTED BUSINESSES

Section 28–121 *Definitions.* As used in this Article, the following words and terms shall have the meanings ascribed to them in this Section, unless the context of their usage clearly indicates another meaning:

*Achromatic*

Colorless, lacking in saturation or hue. Without limitation, gray shall be included, but white and black shall be excluded from the definition of 'achromatic.'

*Adult Bookstore*

An establishment whose major business is the offering to customers of books, magazines, films or videotapes (whether for viewing off premises or on premises by use of motion picture machines or other image producing devices), periodicals, or other printed or pictorial materials which are intended to provide sexual stimulation or sexual gratification to such customers, and which are distinguished by or characterized by an emphasis on matter depicting, describing or relating to 'specified sexual activities,' or 'specified anatomical areas.'

*Adult Cabaret*

An establishment whose major business is the offering to customers of live entertainment which is intended to provide sexual stimulation or sexual gratification to such customers, and which is distinguished by or characterized by an emphasis on matter depicting, describing or relating to 'specified sexual activities,' or 'specified anatomical areas.'

*Adult Encounter Parlor*

An establishment whose major business is the provision of premises where customers either congregate, associate, or consort with employees who engage in 'specified sexual activities' with or in the presence of such customers, or who display 'specified anatomical areas' in the presence of such customers, with the intent of providing sex-

ual stimulation or sexual gratification to such customers.

### Adult Lounge

An 'adult cabaret' as defined above which is a permitted or licensed premises pursuant to the Texas Alcoholic Beverage Code where alcoholic beverages may be served or sold.

### Adult Modeling Studio

An establishment whose major business is the provision, to customers, of figure models who are so provided with the intent of providing sexual stimulation or sexual gratification to such customers and who engage in 'specified sexual activities' or display 'specified anatomical areas' while being observed, painted, painted upon, sketched, drawn, sculptured, photographed, or otherwise depicted by such customers.

### Adult Movie Theatre

An establishment, containing a room with tiers or rows of seats facing a screen, or projection area, whose major business is the exhibition to customers of motion pictures which are intended to provide sexual stimulation or sexual gratification to such customers and which are distinguished by or characterized by an emphasis on matter depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas.'

### Applicant

The applicant for a permit shall be the intended operator of the enterprise.

### Church

A building, whether situated within the City or not, in which persons regularly assemble for religious worship intended primarily for purposes connected with such worship or for propagating a particular form of religious belief.

### Commercial Multi-Unit Center

A building or structure (including a shopping mall or strip shopping center) containing three (3) or more separate premises, each of which is offered by lease or otherwise for separate occupancy or control and each of which occupies an enclosed area having its own door or entranceway opening onto public property, a public way, or a common area.

### Conduct Any Business In An Enterprise

Any person who does any one or more of the following shall be deemed to be conducting business in an enterprise:

1. operates a cash register, cash drawer or other depository on the enterprise premises where cash funds or records of credit card or other credit transactions generated in any manner by the operation of the establishment or the activities conducted therein are kept;

2. displays or takes orders from any customer for any merchandise, goods, entertainment or other services offered on the enterprise premises;

3. delivers or provides to any customer any merchandise, goods, entertainment or other services offered on the enterprise premises;

4. acts as a door attendant to regulate entry of customers or other persons into the enterprise premises; or

5. supervises or manages other persons in the performance of any of the foregoing activities on the enterprise premises.

### Customer

Any person who:

(1) is allowed to enter a 'regulated establishment' in return for the payment of an admission fee or any other form of consideration or gratuity; or

(2) enters a 'regulated establishment' and purchases, rents or otherwise partakes of any merchandise, goods, entertainment or other services offered therein; or

(3) is a member of and on the premises of a 'regulated establishment' operating as a private club.

### Director

The Chief of Police and such employee(s) of the Police Department as he may desig-

nate to perform the duties of the 'Director' under this Article.

### Display Surface

The entire surface of a sign, on one side, devoted to exhibiting advertising. The display surface shall not include the sign frame and incidental supports thereto.

### Employee

Any person who renders any service whatsoever to the customers of a 'regulated establishment' or who works in or about a 'regulated establishment' and who receives compensation for such service or work from the operator or owner of the 'regulated establishment' or from the customers therein.

### Enterprise

An adult cabaret, adult encounter parlor, adult lounge, adult modeling studio, or any establishment whose major business is the offering to customers of a product or service which is intended to provide sexual stimulation or sexual gratification to such customers, and which is distinguished by or characterized by an emphasis on matter depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas.' The term 'enterprise' shall not be construed to include (1) any 'adult bookstore,' or 'adult movie theatre,' as those terms are defined herein, (2) any business operated by or employing licensed psychologists, licensed physical therapists, licensed athletic trainers, licensed cosmetologists, or licensed barbers performing functions authorized under the licenses held, (3) any business operated by or employing licensed physicians or licensed chiropractors engaged in practicing the healing arts, or (4) any retail establishment whose major business is the offering of wearing apparel for sale to customers.

### Entertainment

Any act or performance, such as a play, skit, reading, revue, pantomime, scene, song, dance, musical rendition or striptease, whether performed by employees, agents, contractors, or customers. The term 'entertainment' shall also mean bartenders, waiters, waitresses, or other employees exposing 'specified anatomical areas' or engaging in 'specified sexual activities' in the presence of customers.

### Exterior Portion

Any part of the physical structure of a 'regulated establishment,' including a wall, veneer, door, fence, roof, roof covering, or window, which is visible from any public way or public property.

### Licensed Day-Care Center

A facility licensed by the State of Texas, whether situated within the City or not, that provides care, training, education, custody, treatment or supervision for more than twelve (12) children under fourteen (14) years of age, where such children are not related by blood, marriage or adoption to the owner or operator of the facility, for less than twenty-four (24) hours a day, regardless of whether or not the facility is operated for a profit or charges for the services it offers.

### Operator

The manager or other natural person principally in charge of a 'regulated establishment.'

*Owner or Owners* shall mean the proprietor if a sole proprietorship, all partners (general and limited) if a partnership, or all officers, directors, and persons holding ten percent (10%) or more of the outstanding shares if a corporation. The term 'owner' shall not include any such person who has given to the operator a statement under oath that he does not desire to be listed on the permit application and that he waives any right to any notice that is required or permitted to be given under this Article.

### Permit

A current, valid permit issued by the Director pursuant to the terms of this Article to an operator for an 'enterprise.'

### Regulated Establishment

Any 'enterprise,' 'adult bookstore,' or 'adult movie theatre' as defined herein.

### Residential

Pertaining to the use of land, whether situated within the City or not, for premises such as homes, townhomes, patio homes, mobile homes, duplexes, condominiums and

apartment complexes, which contain habitable rooms for non-transient occupancy and which are designed primarily for living, sleeping, cooking, and eating therein. A premises which is designed primarily for living, sleeping, cooking and eating therein shall be deemed to be residential in character unless it is actually occupied and used exclusively for other purposes. Hotels, motels, boarding houses, nursing homes, hospitals, and nursery schools shall not be considered to be residential.

*School*

A building, whether situated within the City or not, where persons regularly assemble for the purpose of instruction or education together with the playgrounds, stadia and other structures or grounds used in conjunction therewith. The term is limited to (1) public and private schools used for primary or secondary education, in which any regular kindergarten or grades one through twelve classes are taught, and (2) special educational facilities in which students who have physical or learning disabilities receive specialized education in lieu of attending regular classes in kindergarten or any of grades one through twelve.

*Sign*

Any display, design, pictorial, or other representation, which shall be so constructed, placed, attached, painted, erected, fastened or manufactured in any manner whatsoever so that the same is visible from the outside of a 'regulated establishment' and that is used to seek the attraction of the public to any goods, services or merchandise available at such 'regulated establishment.' The term 'sign' shall also include such representations painted on or otherwise affixed to any exterior portion of a 'regulated establishment' as well as such representations painted on or otherwise affixed to any part of the tract upon which such a 'regulated establishment' is situated.

*Specified Anatomical Areas*

(1) Less than completely and opaquely covered:

 (i) Human genitals, pubic region or pubic hair, or

 (ii) Buttock, or

 (iii) Female breast or breasts below a point immediately above the top of the areola, or

 (iv) Any combination of the foregoing; or,

(2) Human male genitals in a discernibly erect state, even if completely and opaquely covered.

*Specified Sexual Activities*

(1) Human genitals in a discernible state of sexual stimulation or arousal, or

(2) Acts of human masturbation, sexual intercourse or sodomy, or

(3) Fondling or other erotic touching of human genitals, pubic region or pubic hair, buttock or female breast or breasts, or

(4) Any combination of the foregoing.

*Tract*

A contiguous parcel of land under common ownership, whether situated within the City or not.

Section 28–122 *Permit Required.*

(a) It shall be unlawful for any person to own, operate or conduct any business in an enterprise located within the City unless there is a permit for the enterprise.

(b) It shall be unlawful for any person to own, operate, or conduct any business in an enterprise located within the City unless the permit is posted at or near the principal public entrance to the enterprise in such a manner that it will be conspicuous to patrons who enter the premises.

(c) In any prosecution under subsection (a) above, it shall be presumed that there was no permit at the time of the alleged offense, unless a permit was then posted as provided in subsection (b).

Section 28–123 *Permit Applications.*

(a) Applications for a permit, whether original or renewal, must be made to the Director by the intended operator of the enterprise. Applications must be submitted by hand delivery to the office of the Captain of the Vice Division of the Police Department during regular working hours (8:00 a.m. to 4:00 p.m. Monday through

Friday, City holidays excepted.) Application forms shall be supplied by the Director. The intended operator shall be required to give the following information on the application form:

(1) (i) The name, street address (and mailing address if different) and Texas Drivers License number of the intended operator, and any and all aliases; (ii) The name and street address (and mailing address if different) of the owner(s);

(2) The name under which the enterprise is to be operated and a general description of the services to be provided;

(3) The telephone number of the enterprise;

(4) The address, and legal description of the parcel of land on which the enterprise is to be located;

(5) The date on which the owner(s) acquired the enterprise for which the permit is sought, and the date on which the enterprise began operations as an enterprise at the location for which the permit is sought; and

(6) A list of all employees or contractors involved in providing the services to be provided by the enterprise.

(b) The application shall be accompanied by the following:

(1) Payment in full of a fee of (i) three hundred fifty dollars ($350) for an original application, or (ii) one hundred dollars ($100) for a renewal application, as applicable, by certified check, cashiers check or money order, which fee shall not be refundable under any circumstances;

(2) A certified copy of the assumed name certificate filed in compliance with the Assumed Business or Professional Name Act (Texas Revised Civil Statutes Annotated, Business and Commerce Code, Chapter 36) if the enterprise is to be operated under an assumed name;

(3) If the enterprise is a Texas corporation, a certified copy of the articles of incorporation, together with all amendments thereto;

(4) If the enterprise is a foreign corporation, a certified copy of the certificate of authority to transact business in this state, together with all amendments thereto;

(5) If the enterprise is a limited partnership formed under the laws of Texas, a certified copy of the certificate of limited partnership, together with all amendments thereto, filed in the office of the Secretary of State under the Texas Limited Partnership Act (Article 6132a Vernon's Texas Civil Statutes);

(6) If the enterprise is a foreign limited partnership, a certified copy of the certificate of limited partnership and the qualification documents, together with all amendments thereto, filed in the office of the Secretary of State under the Texas Limited Partnership Act (Article 6132a Vernon's Texas Civil Statutes);

(7) Any of items (2) through (6), above shall not be required for a renewal application if the applicant states that the documents previously furnished the Director with the original application or previous renewals thereof remain correct and current.

(c) The application shall contain a statement under oath that:

(1) the applicant has personal knowledge of the information contained in the application and that the information contained therein is true and correct; and,

(2) the applicant has read the provisions of this Article.

(d) A separate application and permit shall be required for each enterprise.

Section 28–124 *Term of Permit; Renewal.*

Each permit shall be valid for a period of one year and shall expire on the anniversary of its date of issuance, unless sooner revoked, or surrendered. Each permit shall be subject to renewal as of its expiration date by the filing of a renewal application with the Director. Renewal applications must be filed at least twenty (20) days prior to the expiration date of the permit that is to be renewed.

Section 28–125 *Issuance or Denial of Permit.*

(a) Within twenty (20) days of receipt of any application, either original or renewal, the Director shall grant or deny the requested permit and give written notice to the applicant as to the decision.

(b) The Director shall issue a permit to the applicant unless one or more of the following conditions exist:

(1) The applicant's enterprise is located within 750 feet of any school, church, or licensed day care center. Measurements shall be made in a straight line, without regard to intervening structures or objects, from the nearest point on the property line of the applicant's enterprise to the nearest point on the property line of the applicant's enterprise to the nearest point on the property line of such school, church, or licensed day care center;

(2) The applicant's enterprise is located within 1000 feet of any other enterprise for which there is a permit. Measurements shall be made in a straight line, without regard to intervening structures or objects, from the nearest point on the property line of the applicant's enterprise to the nearest point on the property line of any other enterprise;

(3) Seventy-five percent (75%) or more of the tracts within a circular area, as described herein, are residential in character. The radius of such circular area shall be 1000 feet, and the center of such circular area shall correspond to the midpoint of a line joining the two most distant points on the boundary of the tract on which the enterprise is located;

(4) The applicant failed to supply all of the information requested on the application;

(5) The applicant gave materially false, fraudulent or untruthful information on the application;

(6) The applicant's enterprise is not in compliance with Section 28–129 and Section 28–130 of this Article;

(7) The application or the enterprise does not meet any other requirement of this Article;

(8) The applicant has not fully complied with all State, Federal and local laws or regulations affecting the conduct of its business; or

(9) The operator has had a permit revoked for the same enterprise within the one hundred eighty (180) day period next preceding the date that the application was filed.

(c) Property uses and distances for original applications shall be determined as of the time that the application is filed. If a renewal application is timely filed as provided in Section 28–124, the property uses and measurements for the renewal application shall be determined as of the time that the original application for the enterprise was filed. If not timely filed, renewal applications shall be subject to the same fees and shall be treated in the same manner in all respects as original applications.

(d) In the event that the Director determines that an applicant is not eligible for a permit, the applicant shall be given notice in writing of the reasons for the denial within 20 days of the receipt of its application by the Director. An applicant may appeal the decision of the Director regarding such denial by filing a written request for a hearing with the Director within fifteen (15) days after he is given notice of such denial. The Director's decision on the application shall be final unless an appeal is timely filed. An appeal shall not stay the Director's decision on the issuance of a permit. The applicant's written request for a hearing shall set out the grounds on which the denial is challenged. The hearing shall be conducted by a hearing official to be designated by the Director. The hearing official shall not have participated in any investigation or decision relating to the denial of the permit. At the hearing the hearing official shall receive oral and written testimony regarding the application. Hearings shall be conducted under rules issued by the Director, which shall be consistent with the nature of the proceed-

ings and shall ensure that each party may present evidence, cross-examine witnesses and be represented by legal counsel.

(e) The hearing official shall conduct the hearing within fifteen (15) days after receipt of the applicant's written request for a hearing unless the applicant requests an extension in writing. The hearing official shall render a written decision and issue notice thereof to the applicant within five (5) days after the conclusion of the hearing. The written decision of the hearing official shall be final unless an appeal is filed to City Council pursuant to Section 28–125(f).

(f) The applicant may appeal the decision of the hearing official to City Council by filing a written notice of appeal with the City Secretary within fifteen (15) days after the applicant is given notice of the hearing official's decision. The notice of appeal shall be accompanied by a memorandum or other writing setting out fully the grounds for such appeal and all arguments in support thereof. The Director may submit a memorandum in response to the memorandum filed by the applicant on appeal to City Council. After reviewing such memoranda, as well as the hearing official's written decision, and the exhibits introduced at the hearing before the hearing official, City Council shall vote to either uphold or overrule the hearing official's decision. Such vote shall be taken within fourteen (14) calendar days after the date on which the City Secretary receives the notice of appeal. However, all parties shall be required to comply with the hearing official's decision during the pendency of the appeal. The decision of the City Council shall be final.

(g) Failure of the Director to give timely notice of his action on an application, or failure of the hearing official to timely conduct or give notice of his decision on an appeal from the Director's decision, or failure of City Council to vote on an appeal from the decision of the hearing official within the limitations of time specified above, shall entitle the applicant to the issuance of temporary permit upon written demand therefor filed by the applicant with the Director. Such a temporary permit shall only be valid until the third day after the Director gives notice of his action on the application or the hearing official gives notice of this decision on the appeal, or the City Council votes on the appeal, as applicable.

Section 28–126 *Transfer upon change.*

(a) A permit is personal to the owner(s) and operator designated in the application, provided it may be transferred pursuant to this Section. A transfer application must be filed by the tenth day next following any change of the owner(s) or operator designated on the application. In the event that a transfer application is not timely filed, then the permit shall be invalid for any purpose relating to the operation of the enterprise, and any transfer shall require and be treated all respects as an original permit application. For purposes of measurements between enterprises under Section 28–125(b)(2) of this Code, an establishment for which the permit has become invalid by operation of this Section shall be treated as though it had a permit until the permit is revoked pursuant to Section 28–127 of the Code and any appeal therefrom to the City Council has been concluded.

(b) The Director shall prescribe a form on which permit transfer applications shall be made. The form shall include a statement under oath that the original application remains correct as previously submitted in all respects except those that are amended hereby. The transfer application shall contain a statement under oath that the individual signing the transfer application has personal knowledge of the information contained therein and that the information is true and correct and shall not be complete unless accompanied by a nonrefundable transfer fee of one hundred dollars ($100.00). Transfer applications shall be filed in the same place and at the same time as original applications and the fee shall be payable in the same manner as for original applications, as provided in Section 28–123 of this Code.

(c) Transfers shall be reviewed, issued and subject to appeal in the same manner as original applications, pursuant to Section 28–125, except that items (1), (2), and (3) of

Subsection (b) shall not apply, and they shall be issued for the remaining term of the permit to be transferred.

Section 28–127 *Revocation or Suspension of Permit.*

(a) The Director shall have the authority to revoke a permit for any one or more of the following reasons:

(1) The owner or operator of the permitted enterprise knowingly allowed a person under seventeen (17) years of age to enter an enterprise;

(2) The permitted enterprise does not conform to the provisions of Section 28–129 and Section 28–130 of this Article;

(3) Three (3) or more cumulative violations of any of the offenses contained in Chapter 21, Chapter 43, Section 22.011, or Section 22.021 of the Texas Penal Code or of the offenses contained in this Article have occurred on the premises of the permitted enterprise. These violations must have occurred in a consecutive period of twelve months, and the owner or operator must have knowingly allowed such violations to occur or did not make a reasonable effort to prevent the occurrence of such violations;

(4) The operator of the permitted enterprise gave materially false, fraudulent or untruthful information on the original, renewal or transfer application form;

(5) The enterprise has been closed for business for a period of thirty (30) consecutive days, unless such closure is due to circumstances beyond the control of the owner, and the owner is proceeding with due diligence, given all attendant circumstances, to reopen the establishment;

(6) That there was a change of owner or operator for which a transfer application was not timely filed pursuant to Section 28–126 of this Article; or

(7) That the permit should not have been issued pursuant to the criteria of Section 28–125 of this Article.

(b) Prior to revocation of a permit, the Director shall investigate the grounds alleged to determine whether probable cause for revocation may exist and if so, shall notify the owner(s) and operator in writing of reasons for the proposed revocation and grant such owner(s) and operator the opportunity to appear before a hearing official to be designated by the Director at a time and place specified within such notice. The hearing official designated shall not have participated in any investigation of the alleged grounds for the revocation. Such hearing shall be held not less than fifteen (15) days after the notice is given. Hearings shall be conducted under rules issued by the Director. Such rules shall be consistent with the nature of the proceedings and shall ensure that each party may present evidence, cross-examine witnesses and be represented by legal counsel. If, after the hearing, the hearing official finds that the permit should be revoked, he shall issue a written order revoking such permit which shall be effective on the third day after notice thereof is given to the operator. If the hearing officer determines, based upon the nature of the violation, that the ends of justice would be served by a suspension in lieu of a revocation, he may suspend the operation of the permit for a period of time to be stated in the order of suspension, not to exceed two (2) months; however, a suspension may not be ordered if the grounds are based upon item (6) or (7) of Subsection (a), above.

(c) The owner(s) or operator shall have the right to appeal an order of the hearing official revoking a permit to the City Council in accordance with the procedure set forth in Section 28–125(f) by delivering notice of appeal to the City Secretary within fifteen (15) days after notice is given to the owner(s) and operator of the order. The filing of an appeal of a revocation to the City Council shall not have the effect of superseding or suspending the order of the Director. Orders suspending permits shall not be subject to any appeal.

(d) An enterprise shall be treated as having a permit for purposes of measurements under Section 28–125(b)(2) of this Code,

▮▮▮▮▮▮▮▮

pending the date for filing an appeal of a permit revocation, and if an appeal is filed, pending the disposition of the appeal by the City Council. An establishment holding a suspended permit shall be treated as having a permit for the purpose of measurements made under Section 28–125(b)(2).

Section 28–128 *Other Permit Provisions.*

(a) A permit is valid only at the location for which it is issued.

(b) It shall be unlawful for any person to counterfeit, forge, change, deface, or alter a permit.

(c) A permit may be cancelled upon written request of the owner(s) or operator and surrender of the permit itself to the Director. Permits shall be surrendered at the same place and at the same time as permit applications as provided in Section 28–123 of this Code. The surrender of a permit shall be effective upon its filing in the office of the Captain of the Vice Division.

Section 28–129 *Exterior Portions of Regulated Establishments.*

(a) It shall be unlawful for an owner or operator of a regulated establishment to allow the merchandise or activities of the regulated establishment to be visible from any point outside such regulated establishment.

(b) It shall be unlawful for the owner or operator of a regulated establishment to allow the exterior portions of the regulated establishment to have flashing lights, or any words, lettering, photographs, silhouettes, drawings, or pictorial representations of any manner except to the extent permitted by the provisions of this Article.

(c) It shall be unlawful for the owner or operator of a regulated establishment to allow exterior portions of the regulated establishment to be painted any color other than a single achromatic color. This provision shall not apply to any regulated establishment if the following conditions are met:

(1) the regulated establishment is a part of a commercial multi-unit center; and

(2) the exterior portions of each individual unit in the commercial multi-unit center, including the exterior portions of the regulated establishment are painted the same color as one another or are painted in such a way so as to be a component of the overall architectural style or pattern of the commercial multi-unit center.

(d) Nothing in this Article shall be construed to require the painting of an otherwise unpainted exterior portion of a regulated establishment.

Section 28–130 *Signage.*

(a) Notwithstanding Chapter 46 of the Building Code or any other City Ordinance, Code, or regulation to the contrary, it shall be unlawful for the owner or operator of any regulated establishment or any other person to erect, construct, or maintain any sign for the regulated establishment other than one 'primary sign' and one 'secondary sign,' as provided herein.

(b) Primary signs shall have no more than two (2) display surfaces. Each such display surface shall:

(1) not contain any flashing lights;

(2) be a flat plane, rectangular in shape;

(3) not exceed seventy-five (75) square feet in area; and

(4) not exceed ten (10) feet in height or ten (10) feet in length.

(c) Primary signs shall contain no photographs, silhouettes, drawings or pictorial representations of any manner, and may contain only:

(1) the name of the regulated establishment and/or

(2) one or more of the following phrases:
 (i) 'Adult Bookstore'
 (ii) 'Adult Movie Theatre'
 (iii) 'Adult Encounter Parlor'
 (iv) 'Adult Cabaret'
 (v) 'Adult Lounge'
 (vi) 'Adult Novelties'
 (vii) 'Adult Entertainment'
 (viii) 'Adult Modeling Studio'

(3) Primary signs for Adult Movie Theatres may contain the additional

phrase, 'Movie Titles Posted on Premises.'

(d) Each letter forming a word on a primary sign shall be of a solid color, and each such letter shall be the same print-type, size and color. The background behind such lettering on the display surface of a primary sign shall be of a uniform and solid color.

(e) Secondary signs shall have only one (1) display surface. Such display surface shall:

(1) be a flat plane, rectangular in shape;

(2) not exceed 20 square feet in area;

(3) not exceed five (5) feet in height and four (4) in width; and

(4) be affixed or attached to any wall or door of the establishment; and

(f) The provisions of item (1) of Subsection (b) and Subsections (c) and (d) shall also apply to secondary signs.

Section 28–131 *Persons Younger than 17 Prohibited from Entry; Attendant Required.*

(a) It shall be unlawful to allow a person who is younger than seventeen (17) years of age to enter or be on the premises of a regulated establishment at any time that the regulated establishment is open for business.

(b) It shall be the duty of the operator of each regulated establishment to insure that an attendant is stationed at each public entrance to the regulated establishment at all times during such regulated establishment's regular business hours. It shall be the duty of the attendant to not allow any person under the age of seventeen (17) years to enter the regulated establishment. It shall be presumed that an attendant knew a person was under the age of seventeen (17) unless such attendant asked for and was furnished (1) a valid operator's, commercial operator's, or chauffeur's driver's license, or (2) a valid personal identification certificate issued by the Texas Department of Public Safety reflecting that such person is seventeen (17) years of age or older.

Section 28–132 *Notices.*

(a) Any notice required or permitted to be given by the Director or any other City office, division, department or other agency under this Article to any applicant, operator or owner of an enterprise may be given either by personal delivery or by certified United States mail, postage prepaid, return receipt requested, addressed to the most recent address as specified in the application for the permit, or transfer application which has been received by the Director, or any notice of address change which has been received by the Director. Notices mailed as above shall be deemed given upon their deposit in the United States mail. In the event that any notice given by mail is returned by the Postal Service, the Director shall cause it to be posted at the principal entrance to the establishment.

(b) Any notice required or permitted to be given to the Director by any person under this Article shall not be deemed given until and unless it is received in the office of the Captain of the Vice Division at the time(s) and in the manner provided for filing of applications in Section 28–123(a) of this Code.

(c) It shall be the duty of each owner who is designated on the permit application and each operator to furnish notice to the Director in writing of any change of residence or mailing address.

Section 28–133 *Violation Deemed Misdemeanor; Continuing Violations.*

Violation of any provision of this Article that is not otherwise punishable pursuant to Article 2372w, Texas Revised Civil Statutes, as amended, shall be punishable by a fine of not less than one hundred fifty dollars ($150) nor more than two hundred dollars ($200). Each day any violation continues shall constitute and be punishable as a separate offense.

Section 28–134 *Authority to File Suit.*

The City Attorney is hereby authorized to file suit to enjoin the violation of this Article."

Section 3. If any provision, section, subsection, sentence, clause, or phrase of this Ordinance, or the application of same to

any person or set of circumstances is for any reason held to be unconstitutional, void or invalid, the validity of the remaining portions of this Ordinance or their application to other persons or sets of circumstances shall not be affected thereby, it being the intent of the City Council in adopting this Ordinance that no portion hereof or provision or regulation contained herein shall become inoperative or fail by reason of any unconstitutionality, voidness or invalidity of any other portion hereof, and all provisions of this Ordinance are declared to be severable for that purpose.

Section 4.

(a) This Ordinance shall take effect on June 3, 1986; provided that the Director shall forthwith proceed to accept applications and issue permits pursuant to the terms of Section 2, above, in accordance with the procedures established in this Section 4. Such permits, if granted, shall be dated June 3, 1986.

(b) Any operator of an enterprise who desires to continue its operation on or after June 3, 1986, or any person who desires to establish an enterprise that will be in operation on June 3, 1986, shall file a permit application with the Director on or before April 4, 1986. If the enterprise is in existence and operation, then the applicant shall furnish evidence with the application in the form of business records and other relevant documents which will set forth and establish the length of time that the enterprise has been in continuous business operation as an enterprise at the location applied for, whether under its present name and ownership or a previous name and ownership, without a closure of thirty consecutive days or more, extending through the date of the permit application ("term of operation").

(c) Applications received by April 4, 1986, for enterprises that are already in operation shall be the first considered. They shall be considered in the order of their terms of operation as determined from the records submitted, so that precedence in measuring any required distances between enterprises shall be given to the enterprise with the longest term of operation. Applications received by April 4, 1986, for enterprises not already in operation shall next be considered in the order of their filing with the Director.

(e) The Director shall give notice of the approval or denial of all applications received on or before April 4, 1986, by May 5, 1986. Applicants may appeal from the decision of the Director as provided in Section 28–125(d) through (f) of the Code of Ordinances. In any such appeal an applicant may, in his notice of appeal, specifically question the Director's determination of the term of operation of another enterprise to the extent that such determination formed the basis for the denial of his application. In such event the operator and owners of the other enterprise shall each be given notice of the hearing and afforded an opportunity to appear therein in defense of the records they submitted to the Director.

(f) The Director shall issue permits to all applicants meeting the requirements of Chapter 28, Article III of the Code of Ordinances who timely file their applications on or before April 4, 1986, by May 27, 1986. A temporary permit may be issued in the same manner as authorized in Section 28–125(g) of the Code of Ordinances, pending the disposition of the appeal, in any instance in which a permit may potentially have to be withdrawn, should the City Council overrule the Director's denial of another permit application which is on appeal.

(g) Permit applications that are filed after April 4, 1986, and prior to May 14, 1986 shall be held by the Director until May 14, 1986 and shall then be considered in the order of their filing with the Director and in accordance with Section 28–125 of the Code of Ordinances. Permit applications filed on or after May 14, 1986 shall be considered in the order of their filing in accordance with Section 28–125.

Section 5.

(a) The provisions of this Section shall only apply to:

(1) any adult lounge that is in business as an adult lounge on March 5, 1986,

and is operating at the same location where it was situated on that date, and

(2) any enterprise of any other type for which a current valid permit is in effect as issued under Section 28–35 (formerly Section 28–73) of the Code of Ordinances on March 5, 1986, and which is operating at the same location where it was situated on that date;

provided that an application is filed for a permit to continue the operation of the business pursuant to Section 4, above on or before April 4, 1986. The term "existing enterprise" as used in this Section shall be so limited in its construction.

(b) an existing enterprise may remain in business, even if the permit application is denied, until November 30, 1986.

(c) The Director may, in his discretion, grant an extension for operation after November 30, 1986, if the owner of the existing enterprise proves that he is unable to recoup his investment in such existing enterprise by that date. In order to secure an extension of time, the owner must submit to the Director a written request for such extension on or before September 1, 1986. No application for extension received by the Director after September 1, 1986 shall be considered. Such written request shall set forth the following information:

(1) the amount of the owner's investment in the existing enterprise through March 5, 1986;

(2) the amount of such investment that has been or will be realized through November 30, 1986;

(3) the life expectancy of the existing enterprise;

(4) the existence or nonexistence of lease obligations, as well as any contingency clauses therein permitting termination of such lease.

This information shall be supported by relevant documentary evidence such as financial statements and tax records. Copies of such documentary evidence must be attached to the request for extension.

(d) The Director shall notify an applicant for an extension of time of the time and place of a hearing to be held on such request before the Director or a hearing official that he may designate. After such hearing, the Director or hearing official shall issue a written order on the request for extension. If the owner desires to appeal the Director's order, he may do so by following the procedure set forth in Section 28–125(f) of the Code of Ordinances. Extensions that are granted shall specify a date certain for closure, and shall not be valid for operation at any other location.

(e) Existing enterprises that remain in operation pursuant to subsection (b) or pursuant to an extension granted pursuant to subsections (c) and (d) shall not be considered as having a permit for purposes of measurement of distances between enterprises as required pursuant to Section 28–125(b)(2) of the Code of Ordinances.

Section 6. Permits issued prior to June 3, 1986, pursuant to Section 28–35 of the Code of Ordinances (formerly Section 28–73 of the Code of Ordinances) shall become invalid on June 3, 1986. Owners or operators of establishments holding permits thereunder who wish to remain in business on or after June 3, 1986 must apply for a new permit under this Ordinance as provided in Section 3, above. The fee therefor shall be that established for an original application, provided the applicant shall be entitled to a credit equal to one dollar ($1) for each day remaining in the term of the permit issued under Section 28–35. The credit shall be calculated as of June 3, 1986.

Section 7. Any extension granted by the Director of Finance and Administration for the removal of a sign under Ordinance No. 83–1812 [Section 28–35 (formerly Section 28–73) of the Code of Ordinances] shall remain valid for the term of such extension.

Section 8. There exists a public emergency requiring that this Ordinance be passed finally on the date of its introduction; therefore, this Ordinance shall be

passed finally on such date and shall take effect as provided in Section 4 above.